UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BUFFALO LABORERS' WELFARE FUND, et al.

                            Plaintiff,

            -vs-                                    06-CV-101C

MCS REMEDIAL SERVICES, INC., et al.,

                            Defendants.

_____

        Plaintiffs are jointly administered, multi-employer, labor-management trust funds

established and maintained in accordance with various collective bargaining agreements,

the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq.

("ERISA"), and the Labor-Management Relations Act of 1947 ("Taft-Hartley Act").[1]

Plaintiffs bring this action pursuant to sections 502(a)(3) and 515 of ERISA, 29 U.S.C.

§§ 1132 (a)(3), 1145, section 301 of the Taft Hartley Act,  29 U.S.C. § 185, and for breach

of contract. Plaintiffs allege that defendant has failed and refused to comply with specific

statutory and contractual obligations to contribute to the funds on behalf of its employees.

        The parties have filed cross motions for partial summary judgment on liability

(Items 10, 20).  Plaintiffs seek an order that defendant is liable for the payment of

employee fringe benefits, dues check-offs, and/or agency fee payments pursuant to a

project labor agreement ("PLA"), collective bargaining agreement ("CBA"), and ERISA.

Defendant argues that it has paid its employees all required "supplements" pursuant to

_____

        [1]  Plaintiffs also include the Administrator of the Funds and the Laborers' International Union of
North America, Local 210.

New York Labor Law § 220 and seeks an order that it is not required to make any further contributions to the funds.  For the reasons that follow, defendant's motion is denied, and plaintiffs' cross motion is granted.

## FACTS

Defendant is a non-union contractor primarily engaged in the business of asbestos removal (Item 13, ¶¶ 5, 7).  Defendant admits that it was hired as a subcontractor on a public works project for the Buffalo Public Schools.  *Id.,* ¶ 8.  Defendant also admits that it executed the Joint Schools Construction Board School Board Construction and Rehabilitation Program Workforce Development and Diversity Program Agreement ("Buffalo Schools Project Labor Agreement" or "PLA").  *Id.,* ¶ 9; Item 21, Exh. A.  That agreement provides, in Article IV, section 4(b), that all subcontractors "shall be required to accept and be bound by the  terms and conditions of this Agreement and shall evidence their acceptance by the execution of this Agreement or a letter of consent . . . ."  The Buffalo Schools PLA also provides, in Article XI, section 2(a), that the contractor "agrees to pay contributions to the established employee benefit funds . . . and to make all employee-authorized deductions in the amounts designated . . . ."  However, contractors may satisfy the benefit obligation with respect to those employees which it designates as "core" employees by "providing those employees with coverage under their private benefit plans . . . ."  *Id.,* section 2(b).  Such coverage must be consistent with New York Labor Law § 220, and the "total benefit payments to be made on behalf of each such employee must be equal [to] the total Section 220 supplement amount and any shortfall must be paid by cash supplement to the employee."  *Id.*  "Core" employees are employees who have been

regularly employed by the contractor for a "reasonable period of time," which is defined as working 1000 hours of employment in the 12 months preceding employment under the Buffalo Schools PLA.  *Id.,* Article V, section 3(b).

Additionally, signatories to the Buffalo Schools PLA agree to be bound by all terms contained in the collective bargaining agreement attached to the PLA as Schedule A, the 2002-2005 independent collective bargaining agreement ("CBA") with Local Union 210. Item 21, Exh. C.  The Buffalo Schools PLA provides that the terms of the CBA shall apply to the extent not modified or covered by the PLA.  Item 21, Exh. A., Article IV, section 5(a). Finally, the Buffalo Schools PLA provides that "employees working on this Project and therefore covered by this Agreement shall be subject to the Union security provisions contained in the applicable local collective bargaining agreements in Schedule A.  Any membership obligation will be limited, at the employee's option and in accordance with law, to financial core membership."  *Id.,* Article V, section 4.

Defendant argues that it has paid all of its employees all wages and supplemental benefits due and owing under the Buffalo Schools PLA (Item 13, ¶ 11).  In his affidavit, James Jerge, President of MCS, stated that defendant paid for an independent qualified health benefits plan for certain of its employees and paid the remaining employees supplemental benefits in the form of cash.  *Id.,* ¶¶ 12, 13.  Additionally, Mr. Jerge averred that each MCS employee has provided a release in which he or she states that defendant paid him or her "the required New York State prevailing wage for services, provided certain health insurance coverage and gave required supplements directly to the [employee]."  *Id.,* ¶ 16.

## DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Sista v. CDC Ixis N. Amer., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings.  Fed.R.Civ.P. 56(e); *accord Sista*, 445 F.3d at 169.

To provide a backdrop to the instant litigation, the court notes that a project labor agreement is:

> a prebid contract between a construction project owner and a labor union (or unions) establishing the union as the collective bargaining representative for all persons who will perform work on the project.  The PLA provides that only contractors and subcontractors who sign a prenegotiated agreement with the union can perform project work.  A PLA thus generally requires all bidders on the project to hire workers through the union hiring halls; follow specified dispute resolution procedures; comply with union wage, benefit, seniority, apprenticeship and other rules; and contribute to the union benefit funds.  In return for a project owner's promise to insist in its specifications that all successful bidders agree to be covered by a PLA, the union promises labor peace through the life of the contract.

*Matter of New York State Chapter, Inc., Associated Gen. Contractors of Am. v. New York State Thruway Auth.*, 88 N.Y.2d 56, 65 (1996) (citations omitted).  The Buffalo

Schools PLA requires compliance with the Local 210 CBA for the duration of the project. According to the terms of the PLA and the CBA, defendant is required to contribute to the employee benefit funds.  Defendant has admitted that it failed to do so.

In its defense, and in support of its motion for summary judgment, defendant argues that it has satisfied its benefit obligations by paying for private health insurance for "certain" of its employees and by paying the remainder of the employees a cash supplement consistent with New York Labor Law § 220.  Labor Law § 220(3) requires that workers employed by a contractor or person doing work in connection with any public works contract shall be paid not less than the prevailing rate of wages and wage supplements paid to workers in the private sector who perform similar work in the same locality.[2] Pursuant to Labor Law § 220,  "supplements" include "all remuneration for employment paid in any medium other than cash, or reimbursement for expenses, or any payments which are not 'wages' within the meaning of the law, including, but not limited to, health, welfare, non-occupational disability, retirement, vacation benefits, holiday pay, life insurance, and apprenticeship training."  N.Y. Labor Law § 220(5)(b).  In support of its argument that it was not required to contribute to the benefit funds, defendant relies on case law construing Labor Law § 220, in which courts have stated that employers may pay supplements in benefits, cash, or a combination of both.  *See General Electric Co. v. New*

---

[2] Because the statute as originally passed made no reference to fringe benefits, bidders on public works contracts who provided no benefits were in a position to underbid those who did.  *General Elec. Co. v. New York State Dep't of Labor*, 891 F.2d 25, 28 (2d Cir. 1989).  Accordingly, section 220 was amended in 1956 "to require that all bidders on public works contracts assume the cost of prevailing fringe benefits in the locality, thus presumably putting all bidders on an even footing." *Id; General Electric Co. v. New York State Dept. of Labor*, 936 F.2d 1448, 1461 (2d Cir. 1991).

*York State Dep't of Labor,* 891 F.2d 25 (2d Cir. 1989); *Action Elec. Contractors Co. v. Goldin,* 474 N.E.2d 601 (N.Y. 1984).[3]

ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  Labor Law § 220 does not relieve defendant of this obligation.  None of the cases cited by defendant supports its argument that it may disregard the provision of the PLA, which specifically requires contribution to the employee benefit funds, and instead pay fringe benefits in the form of a cash supplement to its employees.  The cases cited by defendant which examine Labor Law § 220 do not involve an employer's ERISA obligation to contribute to employee benefit funds.  In fact, they are generally cases in which the plaintiffs challenged the state's efforts to enforce section 220 by arguing that ERISA preempts the state's chosen enforcement method.  *See HMI Mechanical Systems, Inc. v. McGowan,* 266 F.3d 142 (2d Cir. 2001); *Burgio and Campofelice, Inc. v. New York State Dep't of Labor,* 107 F.3d 1000 (2d Cir. 1997); *General Electric Co. v. New York State Dep't of Labor,* 891 F.2d 25 (2d Cir 1989).  In *Action Electrical Contractors Co. v. Goldin,* 64 N.Y.2d 213, 222 (1984), the Court of Appeals held that "[s]upplements may be provided by cash payments equal to the cost of providing the prevailing supplements, a combination of cash and benefits, or by an

---

[3] Defendant also erroneously characterizes plaintiffs' claims as seeking prevailing supplements pursuant to Labor Law § 220.  *See* Item 11, p. 5.  The complaint alleges breach of contract and the violation of ERISA for defendant's failure to contribute to the benefit funds.  Item 1, ¶¶ 8-10,15-19, 28-33.

equivalent benefits plan." However, the case did not involve the employer's failure to make ERISA contributions.

In the absence of a collectively bargained obligation to contribute to the employee benefit funds, fringe benefit "supplements" to workers employed on a public works contract can be paid in a variety of ways, as long as the total amount of the supplement is not less than the amount required by Labor Law § 220 as determined by reference to prevailing standards in the locality. *See HMI Mechanical,* 266 F.3d at 149. Here, however, the Buffalo Schools PLA specifically required contribution to the funds for all employees except those designated as "core" employees. Item 21, Exh. A, Article XI, section 2(a); *see also King v. Audax Const. Corp.,* 2007 WL 2582103, *1 (E.D.N.Y. September, 5, 2007) (CBA required signatory to make benefit payments on behalf of its employees into funds consistent with its compliance with Labor Law § 220). In the case of "core" employees, the employer may satisfy the benefit obligation by providing coverage for those employees under a bona fide private benefit plan which satisfies Labor Law § 220 or by contributing to the funds, at the contractor's option. *Id.,* Article XI, section 2(b). "The total benefit payments to be made on behalf of each such employee must be equal [to] the total Section 200 supplement amount and any shortfall must be paid by cash supplement to the employee." *Id.*

It is unclear whether defendant designated any of its employees as "core" employees. It has shown, at most, that it provided health insurance to "certain" of its employees and states that it provided cash supplements to the others. It is also unclear whether the cost of the health insurance coverage provided by defendant was equal to the "total Section 220 supplement amount." In any event, defendant has not established its

7

compliance with the Buffalo Schools PLA and has admitted that it made no contributions to the benefit funds in violation of ERISA.

Alternatively, defendant has submitted releases, executed by its employees in another action before this court, in which the employees state that they have been paid "certain cash payments equivalent to pension or other benefit contributions" by defendant and are "not entitled to any benefits, claims or privileges" from the funds. The employees are not parties to the contract between plaintiffs and defendant, and the releases do not excuse defendant from making contributions to the funds as required by the Buffalo Schools PLA and ERISA. Additionally, defendant complains that plaintiffs are seeking duplicate benefit payments, as it already paid the benefits in cash to the individual employees. Under the terms of the PLA, defendant did not have the option of discharging its benefit obligation with the payment of cash supplements on behalf of any of its employees, and it must contend with the consequences of its action. Defendant's motion for summary judgment is denied.

Plaintiffs have established defendant's obligation to contribute to the employee benefit funds and its failure to do so, and plaintiffs' motion for partial summary judgment on liability is granted. Plaintiffs have submitted an audit report indicating that defendant is in arrears in the amount of $210,340.92 in fringe benefit contributions, $35,427.48 in dues check-offs, and $818.26 in agency fee payments. Item 22, Exh. A. Plaintiffs also state that defendant is liable for $6,097.50, the cost of the audit, pursuant to the collective bargaining agreement, Schedule A , to the Buffalo Schools PLA. Finally, plaintiffs state that defendant failed to produce payroll records for the time period October 1, 2002 through October 24, 2003, producing records only for the period October 25, 2003 to

8

April 30, 2005.  Accordingly, defendant shall produce payroll records for the time period October 1, 2002 through October 24, 2003 for plaintiffs' audit and inspection within 30 days of the filing of this order.  Following the completion of the audit, the parties are instructed to contact the court to set a further schedule for the submission of plaintiffs' statement of damages and defendant's response thereto.  In the interim, the parties are encouraged to attempt to settle the damages portion of this case.

### CONCLUSION

Defendant's motion for summary judgment is denied, and plaintiffs' cross motion for partial summary judgment on liability is granted.

So ordered.


_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: March 31, 2008
p:\pending\2006\06-101.feb608

9